

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

In re

DAVID JOSEPH RYAN and
MELISSA ANN RYAN,

                Debtors.

Case No. 09-01604
Chapter 7

Re: Docket No. 32

## MEMORANDUM OF DECISION REGARDING
## EFFECT OF DISCHARGE ORDER AND FINAL DECREE
## ON CERTAIN POST-DISCHARGE CLAIMS

David Joseph Ryan and Melissa Ann Ryan commenced a chapter 7 bankruptcy

case, stated their intention to "surrender" their residence, and obtained a discharge in

bankruptcy. Later, Mr. and Mrs. Ryan brought an action in Hawaii state court against

CIT Bank ("CIT"), alleging that, after the discharge and final decree were entered,

CIT's predecessor conducted  a wrongful foreclosure of their residence. CIT moved to

dismiss, arguing that the Ryans' "surrender" of their residence precluded them from

asserting those claims. The Ryans asked this court to clarify the effects of its orders on

their wrongful foreclosure action. This memorandum explains the meaning and effect of "surrender" in the context of the Ryans' claims for a post-discharge wrongful foreclosure.

## I. BACKGROUND

The relevant facts are undisputed.

On January 23, 2004, the Ryans purchased a home located at 209 Halona Street, Kihei, Maui (the "Property"). In 2008, Debtors borrowed $625,500.00 secured by a mortgage on the Property.

On January 16, 2009, the Ryans filed this bankruptcy case. In their schedules, they stated that the Property was worth $690,800.00, and was subject to the mortgage and their homestead exemption of $21,925.00.[1] On their statement of intention, the Ryans listed the Property as "surrendered."[2] They also filed a Declaration of Debtor re: Surrender of Property ("surrender declaration"), surrendering and relinquishing "any and all legal, equitable and possessory interests" in the Property.[3]

On August 14, 2009, OneWest Bank ("OneWest") filed a motion for relief from the automatic stay to foreclose the mortgage on the Property.[4] OneWest claimed

---

[1] Dkt. #1 at 15.

[2] Dkt. # 1 at 36.

[3] Dkt. # 4.

[4] Dkt. # 14.

2

it held the original note and was owed payments from the Ryans. The Ryans did not oppose the motion and the court granted it on September 1, 2009.[5]

On September 5, 2009, the chapter 7 trustee filed a report of no distribution, certifying that the estate was fully administered.[6] On October 14, 2009, the court granted the Ryans a discharge and closed the bankruptcy case.

On January 15, 2010, OneWest foreclosed on the Property through a nonjudicial foreclosure.

On January 21, 2016, the Ryans commenced a wrongful foreclosure action in Hawaii state court against CIT, OneWest's successor-in-interest. CIT moved to dismiss the complaint, arguing that the Ryans are judicially estopped from pursuing their claims because the bankruptcy court relied on the statement of intention and the surrender declaration when it entered the Ryans' discharge order. CIT further argued that the Ryans lack standing to bring the wrongful foreclosure claims because they could not have been injured when OneWest foreclosed, as they no longer owned the home after surrendering it in their bankruptcy case. In response to CIT's motion to dismiss, the Ryans reopened their bankruptcy case and filed the instant motion.

---

[5] Dkt. # 19.

[6] Dkt. # 22.

3

II.    DISCUSSION

A.    Justiciability

The Ryans request an order from this court stating that their chapter 7 discharge and the final decree do not deprive them of any substantive state law right to litigate their wrongful foreclosure action. CIT contends that a clarifying order from this court would constitute an advisory opinion because it would not resolve the judicial estoppel or standing issues that CIT raised in the wrongful foreclosure action.

"The Constitution limits the jurisdiction of the federal courts to live cases and controversies, and as such federal courts may not issue advisory opinions."[7] There is undoubtedly a live dispute between the Ryans and CIT about the validity of the foreclosure and the Ryans' right to challenge it. The parties' disagreement about the meaning and effect of "surrender" under the Bankruptcy Code is not feigned or hypothetical.

The cases cited by CIT are not applicable. In *Coffin v. Malvern Federal Sav. Bank*,[8] the court of appeals held that the bankruptcy court rendered an advisory opinion when it said that certain liens would survive the discharge in a chapter 13 case. *Coffin* is distinguishable because the bankruptcy court there declared the prospective effect of a discharge that had not been granted, while in this case the

---

[7] *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010).

[8] 90 F.3d 851 (3d Cir. 1996).

4

discharge has already been entered and the parties are actively litigating its effect. In *Elias v. Lisowski Law Firm, Chtd. (In re Elias)*,[9] the court held that, after the dismissal of a bankruptcy case, the bankruptcy court properly exercised its discretion when it declined to enter orders about attorneys' fees incurred during the case. In contrast, the Ryans ask me to interpret the orders that were actually entered, not to grant new relief. "[I]t is well recognized that the bankruptcy court has power to interpret and enforce its own orders."[10]

A live controversy exists and this matter is justiciable.

## B.    Statutory Subject Matter Jurisdiction

CIT argues that this court lacks statutory subject matter jurisdiction to adjudicate this motion. I disagree in part.

The jurisdiction of the bankruptcy courts, like all federal courts, is created and limited by statute.[11] The federal district courts have "original and exclusive jurisdiction" over all bankruptcy cases and original but nonexclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title

---

[9] 215 B.R. 600 (BAP 9th Cir. 1997), *affirmed*, 188 F.3d 1160 (9th Cir. 1999).

[10] *Wilshire Courtyard v. California Franchise Tax Board (In re Wilshire Courtyard)*, 729 F.3d 1279, 1289 (9th Cir. 2013) (citing *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

[11] *Celotex Corp. v. Edwards*, 514 U.S. 300, 307(1995); *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013).

5

11."[12]

The federal district courts may refer to the bankruptcy courts some or all of the matters covered by these jurisdictional grants.[13] The district court for this district has referred all such matters to the bankruptcy court.[14]

The phrases "arising under title 11," "arising in a case under title 11," and "related to a case under title 11" are terms of art. A proceeding "arises under" title 11 if it presents claims for relief created or controlled by title 11.[15] The claims for relief in a proceeding "arising in" a title 11 case are not explicitly created or controlled by title 11, but such claims nonetheless would have no existence outside of a bankruptcy case. The remaining category of bankruptcy jurisdiction, "related to" jurisdiction, is an exceptionally broad category encompassing virtually any matter either directly or indirectly related to the bankruptcy case.[16] The Ninth Circuit applies the *Pacor* test to determine "related to" jurisdiction.[17] If the determination at issue, in any conceivable

---

[12] *In re Wilshire Courtyard*, 729 F.3d at 1285 (9th Cir. 2013).

[13] 28 U.S.C. § 157(a).

[14] LR 1070.1(a).

[15] *In re Wilshire Courtyard*, 729 F.3d at1285 (9th Cir. 2013).

[16] *In re Chagolla*, 544 B.R. 676, 680 (BAP 9th Cir. 2016)(citing *Sasson v. Sokoloff*, 424 F.3d 864, 868 (9th Cir. 2005).

[17] *In re Deitz*, 760 F.3d 1038, 1053 (9th Cir. 2014).

6

way, could affect the bankruptcy estate, then such jurisdiction exists.[18]

This motion raises two issues over which this court has statutory subject matter jurisdiction.

The first is the meaning of the word "surrender" as it is used in section 521. This definitional question "arises under" the Code because the answer "depends on a substantive provision of the Bankruptcy Code."[19]

The second is whether the entry of the discharge order and the final decree were dependent on the statement of intention or the surrender declaration. This issue also "arises under" the Code because it turns on a construction of multiple Code sections.

Even if they were not expressly rooted in the Code, both of these questions also "arises in" the bankruptcy case because they would not independently exist outside of bankruptcy.[20] There is no such thing as a statement of intention or a surrender declaration outside of a bankruptcy proceeding.

The other disputes between the parties, including whether judicial estoppel applies, are questions of state law that depend only in part on the bankruptcy law

---

[18] *Id.*; *Vacation Village, Inc. v. Clark County Nev.*, 497 F.3d 902, 911, (9th Cir.2007)(citing *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)), for the proposition that "where the cause of action is between third parties, the test for whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.")

[19] *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010).

[20] *Id.*

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed 10/19/16   Page 7 of 22

principles discussed in this decision. Those larger questions therefore do not "arise under" the Bankruptcy Code or "arise in" the bankruptcy case. They may be "related to" the Ryans' bankruptcy case, but, for the reasons stated in the next section, I will abstain from deciding them.

## C. Abstention

CIT argues that this court should exercise its power of discretionary abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[21]

According to the Ninth Circuit, a court should consider twelve factors in determining whether discretionary abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding

---

[21] 28 U.S.C. § 1334(c)(1).

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed  10/19/16   Page 8 of 22

of nondebtor parties.[22]

The court must weigh each of these factors against the others. A court can apply discretionary abstention even if fewer than all of the factors weigh in favor of abstention.[23] In this case, the factors, applied to the two questions of bankruptcy law described in the preceding section and taken together, weigh against abstention.

**Effect on Administration of the Estate.** The estate has already been administered and the Ryans have received their discharge, so this factor weighs in favor of abstention.

**State Law Issues Predominate Over Bankruptcy Issues.** The dispute between CIT and the Ryans includes many issues of state law. But I will rule solely on issues of bankruptcy law. In light of the limited relief that I will grant, this factor weighs against abstention.

**Difficulty or Unsettled Nature of Applicable Law.** The law concerning the meaning and effect of "surrender" as used in the Code is difficult and unsettled. The bankruptcy court is better situated than the state court to interpret the Code. This factor weighs strongly against abstention.

**Presence of a Related Proceeding in State Court.** This proceeding is closely

---

[22] *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990) (quoting *In re Republic Reader's Serv., Inc.*, 81 B. R. 422, 429 (Bankr. S. D. Tex. 1987)).

[23] *See, e. g., id.*

9

related to the state court proceedings. This factor favors abstention.

**Jurisdictional Basis Other than 28 U.S.C. § 1334.** Section 1334 is the sole basis for federal jurisdiction. This factor weighs against abstention.

**Degree of Relatedness or Remoteness to Bankruptcy Case.** The issues that the Ryans raise bear directly on the extent of the relief which chapter 7 debtors such as the Ryans receive. This close relationship weighs strongly against abstention.

**Substance Rather than Form of "Core" Proceeding.** Because this matter involves the meaning and effect of the Code, it is a core proceeding both in form and in substance. This factor weighs against abstention.

**Feasibility of Severing State Law Claims from Core Bankruptcy Matters.** The bankruptcy law issues are readily severable from the state law issues. This factor does not favor abstention.

**Burden of Bankruptcy Court's Docket**. This case is not particularly burdensome. Therefore, this factor does not favor abstention.

**Likelihood that Commencement in Bankruptcy Court Involves Forum Shopping.** Asking a specialized court to construe its own orders, and to address legal questions within its area of specialization, is not improper forum shopping. This factor weighs against abstention.

**Existence of a Right to a Jury Trial**. The parties may have a right to a jury trial in the wrongful foreclosure action but this motion raises only legal issues that would

10

not be presented to the jury. This factor is neutral.

**Presence of Nondebtor Parties**. The parties are the Ryans and their secured creditor, CIT, whose predecessor, OneWest, obtained stay relief during the chapter 7 case. No other parties are affected. This factor weighs against abstention.

On balance, these factors suggest that I should not abstain from deciding the limited issues of federal bankruptcy law discussed in this decision. The Ryans are probably not asking me to decide the larger questions of judicial estoppel under state law, but if they are, I abstain from deciding those question.

### D. Reopening the Bankruptcy Case

CIT contends that the bankruptcy case was needlessly reopened because there is nothing for the bankruptcy court to interpret or enforce. I disagree.

Section 350(b) permits reopening to "accord relief to the debtor."[24] The "decision to reopen is entirely within [the bankruptcy court's] sound discretion."[25] A bankruptcy court should decline to reopen a case when doing so would be a "pointless exercise," but in this case, reopening allows the Ryans to seek relief by obtaining clarification on the effect of their bankruptcy discharge on their post-bankruptcy rights.[26] Reopening was proper.

---

[24] A bankruptcy court may reopen a closed case "to administer asserts, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

[25] *Cherry v. Castillo*, 297 F.3d 940, 945 (9th Cir. 2002).

[26] *See In re Beezley*, 994 F.2d 1433, 1434 (9th Cir. 1993).

11

E.     The Meaning of "Surrender" in Section 521(a)(2)(A)

CIT argues that the Ryans' statement in their chapter 7 case of their intention to "surrender" their residence operated as a "relinquishment of the debtor's interest in the secured property as against the secured creditor"[27] and precluded them from suing for a post-discharge wrongful foreclosure. I disagree.

Section 521(a)(2) requires an individual chapter 7 debtor who owns encumbered property to file "a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property" and "to perform his intention with respect to such property" within a stated period.[28] The section contains a savings

---

[27] Dkt. # 37 at 38.

[28] Section 521 states in relevant part:

(a) The debtor shall– . . .

    (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--

        (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

12

provision, sometimes called a "hanging paragraph" because of its unusual placement: "nothing in paragraphs (A) or (B) . . . shall alter the debtor's or the trustee's rights with regard to [the collateral] under this title."[29]

The Code does not define "surrender." Section 521(a)(2) also does not say to whom the debtor must surrender the property, or what "surrender" requires the debtor to do.

Confusingly, another subsection of section 521(a) also uses the word "surrender." Section 521(a)(4) provides that, if a trustee is serving in the case, the debtor must "surrender to the trustee all property of the estate . . . ."

Two Code sections[30] state that, if a debtor fails to state his intentions or to carry out his intentions, the automatic stay is lifted. But both of those sections apply only if the collateral is personal property. No other Code sections describe the effect of the statement of intention.

The Ryans argue that debtors who elect to "surrender" the collateral under

---

(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;

except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h). 11 U.S.C. § 521.

[29] *Id.*

[30] 11 U.S.C. §§ 362(h) and 521(a)(6).

13

section 521(a)(2) need only "surrender" the property to the trustee under section 521(a)(4). This cannot be correct. The debtor in a chapter 7 case has an absolute duty to surrender property of the estate to the trustee on request. The debtor cannot avoid that obligation by choosing to redeem or reaffirm a secured debt on the property. Suppose the debtor owned real property worth $500,000 and subject to a mortgage securing a $10,000 debt. The debtor could redeem the collateral by paying $10,000 to the secured creditor[31] or could reaffirm the $10,000 debt by making a repayment agreement with the secured creditor.[32] But neither of these simple expedients prevents the trustee from selling the property or permits the debtor to deprive the unsecured creditors of $490,000 in gross equity. Further, interpreting "surrender" in section 521(a)(2) as the same as the "surrender" required by section 521(a)(4) would render part of section 521(a)(2) superfluous. Therefore, although it is unusual to give the same word different meanings in two subsections of the same statutory section, "surrender" in section 521(a)(2) must not mean just "surrender" to the trustee under section 521(a)(4).

CIT argues that "surrender" under section 521(a)(2) precludes a debtor from contesting a post-discharge foreclosure on the surrendered property.[33] The leading case

---

[31] 11 U.S.C. § 722.

[32] 11 U.S.C. § 524(c), (k).

[33] CIT argued to the state court that the surrender divested the Ryans of ownership of the property. Therefore, CIT argued that the foreclosure did not inflict upon the Ryans injury in fact

14

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed 10/19/16   Page 14 of 22

that supports CIT's position is the Eleventh Circuit's decision in *Failla*, which came down after the hearing on the Ryans' motion. The Eleventh Circuit held that "'surrender' required debtors to drop their opposition to a foreclosure action."[34] I respectfully disagree.

The court relied heavily on a dictionary definition of "surrender" as "[t]he giving up of a right or claim."[35] But the dictionary definition does not say *what* "right or claim" is being given up. Viewing the word "surrender" in its immediate statutory context, it is most logical to conclude that the "right or claim" that the debtor gives up is the right to redeem the collateral or to reaffirm the secured debt. Nothing in the language of section 521 suggests that the debtor is required to give a broader waiver.

The *Failla* court continues:

> Debtors who surrender property must get out of the creditor's way. "[I]n order for surrender to mean anything in the context of § 521(a)(2), it has to mean that . . . debtor[s] . . . must not contest the efforts of the lienholder to foreclose on the property." Otherwise, debtors could obtain a discharge in bankruptcy based, in part, on their sworn statement to surrender and "enjoy possession of the collateral indefinitely while hindering and prolonging the state court process."[36]

---

sufficient to confer standing upon them. This is plainly wrong: "surrender" does not transfer ownership. *Batali v. Mira Owners Association (In re Batali)*, 2015 WL 7758330 (BAP 9th Cir. Dec. 1, 2015).

[34] *Failla v. Citibank, N.A. (In re Failla)*, No. 15-15626, 2016 WL 5750666 at *3 (Oct. 4, 2016). This decision resolved a split among bankruptcy courts in Florida.

[35] *Id.* at *4.

[36] *Id.* (internal citations omitted).

15

This reasoning is also flawed. First, there is another perfectly plausible definition of "surrender" in section 521(a)(2): giving up the right to redeem or reaffirm. Second, the court assumes that the debtor's right to a discharge is contingent upon the debtor's surrender of the collateral. As the following section will show, this assumption is false. The debtor's failure to state his intention, or failure to carry out his stated intention, has no effect on the debtor's right to a discharge.

The *Failla* court held that its view is consistent with the savings clause (or "hanging paragraph") of section 521(a)(2):

> The hanging paragraph in section 521(a)(2) also does not give the debtor the right to oppose a foreclosure action. The hanging paragraph states that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)." The key words for purposes of this dispute are "under this title." The hanging paragraph means that section 521(a)(2) does not affect the debtor's or the trustee's bankruptcy rights. Section 521(a)(2) does not affect the trustee's bankruptcy rights because a debtor must first surrender property to the trustee—who liquidates it or abandons it—before surrendering it to the creditor. And section 521(a)(2) does not affect the debtor's bankruptcy rights because a creditor is still subject to the automatic stay and cannot foreclose on the property until the trustee decides to abandon it. The hanging paragraph spells out an order of operations. It does not mean that a debtor who declares he will surrender his property can then undo his surrender after the bankruptcy is over and the creditor initiates a foreclosure action.[37]

This reasoning assumes that the debtor's only "bankruptcy rights" in the collateral are the protection of the automatic stay. This assumption is not correct. Among a great

---

[37] *Id.*

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed 10/19/16   Page 16 of 22

many other rights, debtors have the right to object to the secured creditor's claim and challenge liens.[38] A party in interest, including the debtor, can challenge secured claims on any ground available under nonbankruptcy law. There is no good reason to construe the savings clause as limiting the debtor's post-bankruptcy rights and defenses.

In short, I disagree with *Failla* and similar decisions holding that surrender requires the debtor to give up all rights to defend against a post-discharge foreclosure. Instead, I agree with the decisions holding that the debtor's stated intent to surrender merely means that the debtor does not intend to reaffirm, redeem, or exempt the property.[39] This is consistent with the decision of the district court for this district in *Sigwart*.[40] It is also consistent with the view of the bankruptcy appellate panel for this

---

[38] 11 U.S.C. § 502(a) (a "party in interest" may object to filed claims).

[39] *See Green Tree Fin. Servicing Corp. v. Theobald (In re Theobald)*, 218 B.R. 133, 136 (BAP 10th Cir. 1998) ("Section 521 was not designed to provide a mechanism by which creditors may avoid obligations imposed by state law."); *In re Kasper*, 309 B.R. 82, 86 (Bankr. D.D.C. 2004); *In re Lair*, 235 B.R. 1, 12 (Bankr. M.D. La. 1999)(stating that "surrender" means nothing other than choosing not to utilize the bankruptcy alternatives of reaffirmation, redemption or exemption and avoidance).

[40] *Sigwart v. U.S. Bank N.A.,* Civ. No. 13-00529 LEK-RLP, 2014 WL 1322813 (D. Haw. Mar. 31, 2014).

17

circuit[41] and the leading bankruptcy treatise[42] that section 521(a)(2) is a notice provision that does not affect the respective rights of the debtor and the secured creditor (other than possibly resulting in an early termination of the automatic stay).

Surrender should not affect a debtor's substantive rights for a number of reasons.

First, the Code spells out the consequences of a stated intention to surrender: in certain circumstances, the automatic stay is terminated. If Congress intended that "surrender" would have the far-reaching consequences described in *Failla*, Congress could and would have said so.

Second, the Code gives only the trustee the authority to compel a debtor to file the statement of intention and to carry out the stated intention.[43] The fact that Congress did not give creditors the power to enforce the debtor's stated intention emphasizes the limited effect of "surrender."

Third, the savings clause or "hanging paragraph" of section 521(a)(2), fairly read, means that "surrender" does not alter any substantive rights or defenses.

---

[41] *Mayton v. Sears, Roebuck & Co. (In re Mayton)*, 208 B.R. 61 (BAP 9th Cir. 1997) ("the only logical basis for reconciling the conflicting elements of [§ 521(a)(2)] is to hold that it is essentially a notice statute.").

[42] 4 Collier on Bankruptcy ¶ 521.14[4], at 521-49 (16th ed. 2016) ("This provision does not affect the debtor's substantive rights vis a vis the creditor . . . .").

[43] *See* 11 U.S.C. §704(a)(3) (The trustee shall ensure that the debtor shall perform his intention as specified in section 521(a)(2)(B) of this title); *see also In re Kasper*, 309 B.R. 82, 91 (Bankr. D.D.C. 2004).

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed  10/19/16   Page 18 of 22

Finally, there is no reason to read the ambiguous word "surrender" under section 521(a)(2) to give secured creditors a free pass to violate the foreclosure laws. The *Failla* decision implies that a debtor's post-discharge objection to a foreclosure is always abusive, but this is simply incorrect. Debtors may have perfectly legitimate reasons to defend a foreclosure case post-discharge. For example, the property may be subject to a junior lien securing a non-dischargeable debt, such as taxes. This is a particularly common problem in Hawaii, where condominium ownership is prevalent and condominium assessments that are due and payable post-petition are not dischargeable.[44] In such a case, the debtor has a good reason to want the senior lienholder to comply with the law and secure the highest possible price for the property, in order to minimize the debtor's nondischargeable liability.[45]

Thus, the Ryans' statement that they intended to "surrender" the residence and their surrender declaration do not, as a matter of bankruptcy law, preclude the Ryans from defending against a foreclosure or asserting claims based on an allegedly improper foreclosure.

### F. Interplay between the Ryans' Surrender and Their Discharge.

CIT moved to dismiss the Ryans' complaint in state court on the ground that

---

[44] 11 U.S.C. § 523(a)(16). CIT's argument also implies that, if a post-discharge foreclosure produced surplus proceeds, the debtor would not be entitled to the funds. Of course, foreclosure sales rarely produce surplus proceeds, but there is no good reason to give the secured creditor such a windfall.

[45] *See In re Donnell*, 234 B.R. 567, 575 (Bankr. D.N.H. 1999).

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed 10/19/16   Page 19 of 22

they are judicially estopped from bringing the wrongful foreclosure lawsuit. CIT argued that they gained a benefit from their stated intention to surrender the residence when they got their discharge in bankruptcy. The Ryans ask me to clarify that the discharge and final decree were not entered in reliance on the statement of intention.

CIT argues that I should not grant this request because the doctrine of judicial estoppel is a creature of state law which the state court should decide. As a general principle, I agree, but in this case one element of CIT's judicial estoppel argument is based entirely on bankruptcy law. It is appropriate for me to clarify this pure issue of bankruptcy law and leave to the state court the larger question of whether judicial estoppel should apply.

As a matter of bankruptcy law, the Ryans' discharge was entirely independent of the "surrender" of the Property. Section 727 says that "the court shall grant the debtor a discharge, unless" certain conditions exist. These conditions are read strictly, narrowly, and in favor of the debtor.[46] None of the conditions that justify denial of discharge has anything to do with the statement of intention.[47] Thus, debtors are entitled to a chapter 7 discharge regardless of (1) whether they file a statement of

---

[46] *In re Neff*, 824 F.3d 1181, 1187 (9th Cir. 2016)(citing *Hawkins v. Franchise Tax Bd. of California*, 769 F.3d 662, 666 (9th Cir. 2014).

[47] CIT relies on the Ninth Circuit's unpublished memorandum in *Rivera v. Recontrust Co.*, 594 Fed. App'x 412 (9th Cir. 2015). I am not bound to follow the decision because the Ninth Circuit chose not to publish it. The concise memorandum suggests that the court thought that the debtor's discharge was dependent on the debtor's statement of intention. For the reasons explained in the text, this is incorrect.

20

intention, (2) what they say in their statement of intention, and (3) whether they carry out their stated intent.[48]

Similarly, the entry of the final decree is not connected to the statement of intention. In a "no-asset" chapter 7 case, the court enters the final decree as soon as the discharge is issued and the trustee files the final report.[49]

## G.  Amendment of Statement of Intention

If their statement of intention does impair their right to prosecute their claims in state court, the Ryans seek permission to amend that statement. Because I have held (as stated in more detail above) that the statement of intention has no such effect, amendment is unnecessary. Strictly as a precautionary matter, however, I will allow the Ryans to file such an amendment within fourteen days after the entry of this decision.

A debtor may amend a statement of intention "at any time before the expiration of the period provided in § 521(a) of the Code."[50] The court may extend this deadline "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect."[51] When the original time to amend the

---

[48] *See* 11 U.S.C. § 727.

[49] This case also does not present the question of whether a debtor can challenge a foreclosure after discharge in a chapter 13 case where the debtor's plan proposed surrender of the collateral and the court confirmed the plan. *Hull v. Wells Fargo Bank, N.A.,* Case No. 6:15-cv-01990-AA, 2016 WL 1271675, at * 4 (D. Or. March 28, 2016).

[50] Fed. R. Bankr. P. 1009(b).

[51] Fed. R. Bankr. P. 9006(b)(1).

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed  10/19/16   Page 21 of 22

statement of intention expired, the Ryans could not have reasonably foreseen that they would have claims arising from a foreclosure that occurred months later. Their failure to seek an extension earlier is excusable, particularly in view of the conflict in the case law concerning the effect of their statement.

CIT argues that an amendment at this late date will prejudice it:

> OneWest presumably would have objected to the bankruptcy had it:(a) not reasonably believed that Debtor would in fact surrender the Property; and/or (b) known that Debtors' "intent" was to seek return of the Property debt-free seven years after the foreclosure.[52]

CIT does not explain how it would have "objected to the bankruptcy." For the reasons explained above, CIT could not have successfully objected to the Ryans' discharge or enforced the statement of intention. The Ryans' failure to carry out their stated intention would have resulted, at most, in relief from the stay, but OneWest sought relief from the stay, the Ryans did not object, and OneWest got that relief.

## III.   CONCLUSION

Counsel for the Ryans shall submit a proposed order consistent with this decision.

END OF DECISION

---

[52] Dkt. # 37 at 44.

U.S. Bankruptcy Court - Hawaii   #09-01604   Dkt # 56   Filed  10/19/16   Page 22 of 22